UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CALVIN WALKER,

         Petitioner,    05-CV-6460

    v.            **DECISION**
                     **and ORDER**
ANTHONY ZON,
Superintendent

         Respondent.
_____

## **INTRODUCTION**

Petitioner Calvin Walker ("Walker" or "Petitioner") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Erie County Court. Petitioner claims that (1) the trial jury reached its verdict against the weight of the evidence, (2) he was denied effective assistance of counsel in that his attorney was subject to a conflict of interest, and (3) witnesses identified him based on unduly suggestive photo arrays.

For the reasons set forth below, the Court finds that Petitioner's claims are either improper or without merit. Petitioner's § 2254 petition is therefore dismissed.

## **BACKGROUND**

At approximately 5:00pm on June 12, 1999, Thomas Zeigler ("Zeigler") and Petitioner were riding bicycles on Landon Street in the city of Buffalo, New York. (T. 205-06, 660.)[1] At the same time, Timothy Love ("Timothy") was driving an automobile down

---

[1] Citations to "(T. __.)" refer to pages in the Record on Appeal.

Landon Street with Cardel Love ("Cardel") as his passenger. As Timothy and Cardel approached Zeigler and Petitioner, the two pairs exchanged heated words regarding who had the right of way. Timothy and Cardel ultimately made their way around Zeigler and Petitioner and parked in front of 165 Landon Street, a few houses from where the heated argument took place. (T. 499-502.) Timothy and Cardel exited their vehicle and approached 165 Landon Street. Zeigler and Petitioner then rode up to Timothy and Cardel and continued the argument. (T. 502.) At some point during the argument in front of 165 Landon Street, Zeigler discharged a handgun, hitting Cardel in the leg. (T. 505, 663-64, 749.) According to eyewitnesses James Nelson and Eugene Wofford ("Wofford"), Zeigler removed the handgun from his own clothing. (T. 502, 590.) However, Timothy and Cardel testified that Petitioner handed the firearm to Zeigler. (T. 662, 746.)

Prior to trial, Petitioner was identified, *inter alia*, in photo line-ups presented to Cardel and Wofford by officers of the Buffalo Police Department. (T. 90-91, 755, 810-11.) On March 23, 2000, Petitioner was convicted in Erie County Court of first degree attempted assault, second degree criminal possession of a weapon, first degree attempted robbery, two counts of second degree attempted robbery, and second degree attempted assault. (T. 1072-73.) Petitioner was then sentenced to an indeterminate period of imprisonment with a maximum of life and a minimum of sixteen years. (T. 1082.)

On appeal, the New York State Appellate Division, Fourth Department, upheld Petitioner's conviction. The Appellate Division found that the county court did not err in discharging a sworn juror; Petitioner was not denied effective assistance of counsel based on his attorney's alleged conflict of interest since Petitioner understood the potential conflict and waived it after appropriate inquiry by the court pursuant to People v. Gomberg. Petitioner specifically agreed to continued representation by his counsel. Also, the identifications made by eyewitnesses of Petitioner from a lineup and a photo array were valid. Additionally, contrary to Petitioner's assertion, the verdict was not against the weight of the evidence. People v. Walker, 2 A.D.3d 1358 (4th Dept. 2003). Petitioner sought to appeal that decision, however, the New York Court of Appeals denied leave to appeal. People v. Walker, 3 N.Y.3d 650 (2004).

Following the denial by the Court of Appeals, Walker filed this federal habeas corpus petition, in which he makes three claims. See Pet. for Writ of Habeas Corpus, Docket No. 1 ("Petition"). First, Petitioner claims that the trial jury's verdict was against the weight of the evidence. Second, Petitioner claims that his attorney was subject to a conflict of interest that led to ineffective assistance of counsel. Third and last, Petitioner claims that Cardel Love and Eugene Wofford identified him in photo arrays that were unduly suggestive. Respondent answered the petition, asserting no procedural bars, but rather

arguing against Petitioner's claims on the merits. See Mem. in Supp. of Answer, Docket No. 7.

**DISCUSSION**

**I.   Standard of Review**

In reviewing a state prisoner's habeas corpus petition pursuant to 28 U.S.C. § 2254, a federal district court makes an independent determination as to whether the petitioner is in custody in violation of his rights under the Constitution or any laws and treaties of the United States. Coleman v. Thompson, 501 U.S. 722, 730 (1991), reh'g denied, 501 U.S. 1277, (1991). A federal court does not function as an appellate court to review matters within the jurisdiction of the state, or to review rulings and decisions of state trial and appellate courts when it reviews a state prisoner's habeas petition. Rather, the court only determines whether the proceedings in state court amount to a violation of federal constitutional rights. Id. Federal review of a state court conviction is limited to errors of federal constitutional magnitude which denied a criminal defendant the right to a fundamentally fair trial. Cupp v. Naughton, 414 U.S. 141, 144 (1973).

When a habeas claim has been adjudicated in state court, the habeas court may not grant relief unless the state court decision was

> contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or...

> based on an unreasonable determination of the
> facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2). "Clearly established" federal law "refers to the holdings, as opposed to the dicta of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decisions." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is contrary to clearly established federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" that of the Supreme Court. Id. at 405.

A state court decision is an "unreasonable application" of Supreme Court precedent if it

> [i]dentifies the correct governing legal rule
> from [the Supreme] Court's cases but
> unreasonably applies it to the facts...[or]
> unreasonably extends a legal principle from
> our precedent to a new context where it should
> not apply or unreasonably refuses to extend
> that principle to a new context where it
> should apply.

Id. at 407.

This standard applies even if the state court decision was a summary affirmation of the conviction that did not explicitly reject the federal claim, as long as the decision necessarily determined the claim. Sellan v. Kuhlman, 261 F.3d 303 (2d Cir. 2001).

## II. **Petitioner's "weight of the evidence" argument is a pure state law claim and is not subject to habeas corpus review**

When reviewing a § 2254 habeas corpus petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Estelle v. McGuire, 502 U.S. 62, 68 (1991); see 28 U.S.C. § 2254(a). While a claim that the evidence was *insufficient* to support conviction is based on federal due process principles, see Jackson v. Virginia, 443 U.S. 307, 318-19 (1979), an argument that conviction was against the *weight* of the evidence is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5). Because it is purely an issue of state law, a "weight of the evidence" claim is not subject to federal habeas corpus review. See, e.g., Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) ("a writ of habeas corpus cannot be used to review the weight of evidence"), aff'd sub nom. Craig v. Hecht, 263 U.S. 255 (1923); Cummings v. Burge, 581 F. Supp. 2d 436, 451-52 (W.D.N.Y. 2008) (holding that a weight of the evidence claim "does not raise a federal claim cognizable on habeas review"); see also Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (finding that habeas corpus review is not available for an alleged error of state law).

Here, Petitioner's claim has to do with weighing the evidence against him rather than measuring its sufficiency. He does not argue that his conviction was based upon insufficient or not enough evidence. Instead, he argues that the jury did not properly evaluate the evidence presented at the trial. Petitioner points to

the fact that witnesses James Nelson and Eugene Wofford testified that Thomas Zeigler removed a handgun from his own clothing before shooting Cardel Love, whereas Timothy and Cardel Love each testified that Petitioner handed a firearm to Zeigler prior to the shooting. See Petition at ¶ 12A, referring to T. 520, 590, 662, 746. Because of this inconsistency in testimony, Petitioner argues it was improper for the jury to conclude that Petitioner had the requisite criminal intent to justify his conviction along with Zeigler. Petitioner essentially argues that the presence of inconsistent testimony means that the jury could not reasonably rely on the testimony of Timothy and Cardel Love and, therefore, proof of his criminal intent is insufficient. This argument is incorrect as a matter of law.

There is no question that the jury heard inconsistent testimony regarding who was in original possession of the firearm used to shoot Cardel Love. However, the jury's responsibility as the trier of fact includes resolving such inconsistencies in testimony. See Quartararo v. Hanslmaier, 186 F.3d 91, 96 (2d Cir. 1999). See also United States v. Torres, 552 F.3d 743, 747 (8th Cir. 2009) ("[I]t is within the province of the jury to make credibility assessments and resolve conflicting testimony"); United States v. Bhagat, 436 F.3d 1140, 1146 n.3 (9th Cir. 2006) (finding that the trier of fact determines "credibility of witnesses" and resolves conflicts in evidence); United States v. Bush, 405 F.3d 909, 919 (10th Cir. 2005) ("The jury, as fact finder, has discretion to resolve all conflicting testimony, weigh evidence,

and draw inferences from basic facts"). Further, the jury is under no requirement to resolve evidentiary inconsistencies in favor of the defendant. See Knight v. Walsh, 524 F. Supp. 2d 255, 299 (W.D.N.Y. 2007) (citing United States v. Walsh, 194 F.3d 37, 51-52 (2d Cir. 1999) (holding that the jury is free to resolve discrepancies in testimony in favor of the government).

Accordingly, it is the jury's responsibility to weigh the evidence before it and resolve conflicting testimony in arriving at its decision. A challenge as to the jury's evaluation of testimony is a pure state law issue and is not subject to habeas corpus review. Therefore, Petitioner's claim is without merit, and habeas relief must be denied.

### III. **Petitioner received effective assistance of counsel**

A criminal defendant's Sixth Amendment right to assistance of counsel is a right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). This includes a right to conflict-free representation. Armienti v. United States, 234 F.3d 820, 823 (2d Cir. 2000). Petitioner argues that his attorney operated under a conflict of interest because he represented prosecution witnesses Timothy and Cardel Love on prior unrelated criminal charges. As a consequence of this conflict, Petitioner claims that his attorney's cross examinations of Timothy and Cardel showed a lack of "aggression" and vigor. See Petition at ¶ 12B. This argument is without merit. Petitioner waived his attorney's potential conflict of interest during a Gomberg inquiry conducted

by the trial court (see People v. Gomberg, 38 N.Y.2d 307, 313-14 [1975]).

Here the trial court, upon being apprised of the possibility of a conflict of interest, properly inquired into the extent of that conflict. Armienti, 234 F.3d at 823. If the court finds a conflict as a result of its inquiry, it must either disqualify the attorney in question or obtain a waiver from the attorney's client. Id. The court is obligated to disqualify an attorney if, for example, he is unlicensed or has engaged in the defendant's crimes. United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004). This would constitute a *per se* conflict of interest. Armienti, 234 F.3d at 823-24. Short of a *per se* conflict, the court would be required to disqualify an attorney if it finds a conflict so severe that no rational defendant would knowingly want that attorney to represent him. Jones, 381 F.3d at 120. However, if an attorney suffers from a lesser actual or potential conflict, including one arising from prior representation of a trial witness, the court may accept the defendant's knowing and intelligent waiver of that conflict. Id. at 119; United States v. Perez, 325 F.3d 115, 125-28 (2d Cir. 2003).

Petitioner's attorney suffered from a lesser potential conflict. If privileged information related to his prior representation of Timothy and Cardel Love was vital to his cross examination of those men in Petitioner's case, this conflict might have been actual and/or severe. However, Petitioner's attorney stated at the inquiry that he did not even recollect representing Timothy or Cardel Love, and that the only information he had about

them was their prior criminal record, something any defense counsel would possess. (T. 396, 401-02, 404-05.) As the trial court noted, the only real conflict was the potential that Petitioner's attorney would not "vigorously" question his former clients. (T. 408.) Petitioner therefore had the option to waive his attorney's conflict. See Jones, 381 F.3d at 119; Perez, 325 F.3d at 125-28 (2d Cir. 2003).

The trial court followed New York law by holding an inquiry pursuant to People v. Gomberg. Under Gomberg, the trial court is required to ascertain, on the record, whether the defendant has an awareness of the potential risks involved in a particular course and has knowingly chosen it. Gomberg, 38 N.Y.2d at 313-14. A "particular course" includes waiving the potential conflicts that arise from defense counsel's prior representation of an important prosecution witness. See People v. Wandell, 75 N.Y.2d 951, 952 (1990). There is no "prescribed catechism" that a New York court must follow to ensure that the defendant understands his choices, but it must conduct a "careful inquiry" to effectively safeguard the defendant's rights. People v. Caban, 70 N.Y.2d 695, 697 (1987) (quoting People v. Lloyd, 51 N.Y.2d 107, 112 (1980)).

In the instant case, the trial court discussed the potential conflict with Petitioner, advising him specifically that his attorney might not "vigorously" question Timothy and Cardell Love because he had represented them in previous matters. (T. 406-08.) Petitioner responded that he understood the potential conflict, but

that he preferred to keep his current attorney rather than obtain new counsel.[2]

Although the Second Circuit enforces stricter guidelines than New York State in determining whether a defendant has made an informed decision to waive his counsel's potential conflict of interest, see, e.g., United States v. Iorizzo, 786 F.2d 52, 59 (2d Cir. 1986); United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982), the principles of federalism underlying habeas corpus review preclude the Court from overruling state court procedures that do not violate clearly established constitutional law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1) and (2); Coleman, 501 U.S. at 730; Cupp, 414 U.S. at 144. The Court finds no Supreme Court ruling that undermines the constitutionality of

---

[2] The court (out of the presence of the jury) engaged in a very detailed discussion with petitioner Walker's counsel, the prosecutor, and with Walker directly. After discussing the potential for conflict the following colloquy took place:

| | |
|---|---|
| The Court: | Do you [Walker] understand now what we are talking about? |
| Defendant Walker: | Yes. |
| The Court: | Because if he [Walker's counsel] represented these people before, he might feel some obligation to not vigorously question them, and that would work against you. Do you understand that? |
| Defendant Walker: | Yes. |
| The Court: | Does that trouble you? Are you worried about that? |
| Defendant Walker: | I'm okay. |
| The Court: | You're okay with it. When you say you are okay with it, are you saying that you have no objection to Mr. Carney representing you, continuing to represent you, even though you now know that he may have represented two of the witnesses against you in this case? |
| Defendant Walker: | Yes, I understand. I have no problem with it. |
| The Court: | Do you understand that if you do have a problem with it, I'll give you another lawyer? |
| Defendant Walker: | Yes, I understand that. |
| The Court: | And you prefer to keep Mr. Carney? |
| Defendant Walker: | Yes, sir. |

(T. 408-409)

the procedures used in New York State's Gomberg inquiry. Petitioner was therefore able to waive his attorney's potential conflict of interest, through appropriate constitutional procedure in New York state court.

However, even if a defendant waives his attorney's potential conflict of interest, he may still claim ineffective assistance of counsel if that waiver turns out to be detrimental to him at trial. Wheat v. United States, 486 U.S. 153, 161 (1988). The Court therefore turns to Petitioner's claim that his counsel ineffectively cross examined witnesses Timothy and Cardel Love.

As noted supra, the Sixth Amendment right to assistance of counsel is a right to effective assistance of counsel. Strickland, 466 U.S. at 686. Whether a criminal defendant's representation is constitutionally inadequate is a mixed question of law and fact. Cuyler v. Sullivan, 446 U.S. 335, 342 (1980). The appropriate constitutional standard for assessing attorney performance is "reasonably effective assistance." Strickland, 466 U.S. at 687.

To demonstrate constitutional ineffectiveness, the defendant must first show that counsel's performance was deficient. Id. at 687. Generally, deficiencies in counsel's performance do not warrant setting aside the judgment in a criminal proceeding unless they are prejudicial to the defense. To determine whether a counsel's conduct is deficient, the court must "determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. In gauging the deficiency, the court

must be "highly deferential," must consider "all the circumstances," must make every effort "to eliminate the distorting effects of hindsight," and must operate with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 688-89.

Also, a habeas petitioner must demonstrate that there is a "reasonable probability" that, but for the deficiency, the outcome would have been different. McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999) (quoting Strickland, 466 U.S. at 688). A reasonable probability is a probability "sufficient to undermine confidence" in the trial's outcome. Strickland, 466 U.S. at 688. If an attorney's error has no effect on the judgment, it is not a denial of effective assistance of counsel and therefore is not a violation of the Sixth Amendment. Id. at 691. In other words, a petitioner must show that his counsel's deficient performance prejudiced him. Id. at 694. The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was deficient.

Petitioner claims that his attorney ineffectively cross examined Timothy and Cardel Love. See Petition at ¶ 12B. However, a review of the record shows that Petitioner's counsel was quite vigorous in his cross examinations, certainly performing within "the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Petitioner's counsel questioned Timothy Love regarding his inability to identify Petitioner in a photo array, his assertion that Petitioner physically gave the

Page -13-

handgun to Zeigler prior to the shooting, his impending sentencing on unrelated matters, and the implications of his co-operation with the prosecution for that sentencing. (T. 691-722.) Petitioner's attorney cross examined Cardel Love with equal professional competence and vigor, mainly seeking to undermine the witness's identification of his client as unreliable or even coerced. (T. 772-800.) The Court therefore finds that Petitioner's representation was not deficient as Petitioner alleges. Accordingly, the Court need not address the prejudice issue, nor does it need to evaluate whether any alleged deficiency would have altered the trial's outcome.

## IV. **The pre-trial photo arrays were not unduly suggestive**

On June 29, 1999, Detective Mark Vaughn of the Buffalo Police Department met with Cardel Love in order to show Cardel a photo array. (T. 70.) Prior to showing Cardel the pictures, Det. Vaughn instructed Cardel that a person involved in the crime of June 12, 1999, may or may not be in those photographs, and that hairstyles can change. (T. 71.) Det. Vaughn then showed Cardel the photo array, and Cardel identified photograph number five as the man who handed Zeigler the firearm used in the shooting. (T. 71-72.) Photograph number five was Petitioner. (Id.)

On July 1, 1999, Detective Daniel Rinaldo of the Buffalo Police Department met with Eugene Wofford, also for the purpose of examining a photo array. (T. 90.) Prior to showing Wofford the photographs, Det. Rinaldo read Wofford instructions that included the following:

> Carefully look at all the photographs before you make any decisions. This group of photographs may or may not contain a picture of the person who committed the crime now being investigated. Keep in mind that hairstyles, beards and mustaches may be easily changed.

(T. 89, 91.) Det. Rinaldo then showed Wofford the photo array, and Wofford identified photograph number six as the man who was with Zeigler when Zeigler shot Cardel Love. (T. 91.) Photograph number six was Petitioner. (Id.)

Petitioner claims that the photo arrays shown to Cardel Love and Eugene Wofford were unduly suggestive in that Petitioner was the only bald man pictured in both instances. Petition at ¶ 12C. Petitioner's claim is without merit.

In evaluating whether a photo array is unduly suggestive, the principal question is whether the picture of the accused so stands out from the other photographs as to suggest to an identifying witness that the accused is more likely to be the culprit. United States v. Concepcion, 983 F.2d 369, 377 (2d Cir. 1992); see People v. Lee, 96 N.Y.2d 157, 163 (asking whether the differences in the photographs were sufficient to create a substantial likelihood that the defendant would be singled out for identification) (citing People v. Chipp, 75 N.Y.2d 327, 336 (1990)). The picture of the accused improperly stands out if he meets the description of the perpetrator previously given by witnesses, and the other photographs obviously do not. Raheem v. Kelly, 257 F.3d 122, 134 (2d Cir. 2001).

Because witnesses previously characterized the man with Zeigler as being bald, (T. 813), Petitioner argues that his picture met this description, while the other photographs in the arrays obviously did not. See Petition at ¶ 12C. His picture therefore stood out, Petitioner contends, suggesting to identifying witnesses that he was more likely to be the culprit. See Id. However, in the picture shown to Cardel Love and Eugene Wofford, the lighting renders the presence of hair on Petitioner's head ambiguous (T. 82, 105-06), something that seriously undermines the foundation of Petitioner's allegation. It is unclear whether hypothetical witnesses would be drawn to Petitioner's photograph because they thought they saw a bald head, and there is no indication that the actual witnesses were in fact drawn to Petitioner's photograph for that reason. (See T. 71-72, 91.)

Further, the appellate court found that, although the hairstyles of the men in the photo arrays were not identical, their differences did not draw the viewer's attention to Petitioner "in such a way as to indicate that the police were urging a particular selection." Walker, 2 A.D.3d at 1359. In habeas proceedings, a state court's factual findings are entitled to a presumption of correctness which the petitioner bears the burden of overcoming by "clear and convincing" evidence. Corchado v. Rabideau, 576 F.Supp.2d 433, 448 (W.D.N.Y. 2008) (citing 28 U.S.C. § 2254(e)(1)); see also Velazquez v. Poole, 614 F. Supp. 2d 284, 325 (E.D.N.Y. 2007) (court's factual finding is presumed to be correct for purposes of habeas review). Aside from Petitioner's assertion that

the photo arrays might as well have had one picture in "black and white and the rest in color," see Petition at ¶ 12C, Petitioner has not presented clear and convincing evidence that the state court's factual determination was erroneous. Further, the Court has no evidence before it that would lead it to question the Appellate Division's finding that Petitioner's picture does not stand out from the other photographs. Accordingly, the Court finds that the photo arrays shown to Cardel Love and Eugene Wofford were not unduly suggestive. Thus, the Appellate Division was reasonable in finding that the photo arrays presented to the eye witnesses were not unduly suggestive. See West v. Greiner, 2004 WL 315247, at *5-6 (E.D.N.Y. Feb. 12, 2004)

## CONCLUSION

For the reasons stated above, Walker's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Further, because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. 28 U.S.C. § 2253.

**ALL OF THE ABOVE IS SO ORDERED**

                                        s/Michael A. Telesca
                                        MICHAEL A. TELESCA
                                      United States District Judge

Dated:    Rochester, New York
           July 13, 2009